**Jess D. SONGER, Appellant,**

v.

**Carolyn S. JERVIS, Appellee.**

**No. 87–CA–1336–MR.**

Court of Appeals of Kentucky.

Sept. 16, 1988.

Discretionary Review Denied by Supreme Court, Feb. 1, 1989.

---

Louis N. Garlove, Morris, Garlove, Waterman & Johnson, Louisville, for appellant.

Escum L. Moore, Jr., Turley & Moore, Lexington, Neal Smith, Pikeville, for appellee.

Before COMBS, HAYES and WEST, JJ.

COMBS, Judge.

This is a medical malpractice appeal that originated in the Floyd Circuit Court. The jury awarded the appellee, Carolyn Jervis, damages against the appellant, Dr. Jess Songer, a podiatrist, in the amount of $67,724.00. Appellant argues on appeal that the trial court erred when it overruled his motions for directed verdict and judgment *non obstante veredicto*. We affirm the judgment of the trial court.

Appellee went to see appellant in July of 1983, seeking his professional help for relief from corns. Appellant examined her, made x-rays and then determined that her condition consisted of multiple hammertoes, tailor's bunions on both feet, and a fractured left navicular. Hammertoes is a condition of the feet where the toes are deformed, usually bent downward, and frequently one toe will be on top of another. Navicular, in this case, is an ankle bone.

Appellant admitted appellee to the Highlands Regional Medical Center[1] for surgery on her feet. The three surgeries that the appellant intended to perform were removal of bone joints in each of the four smaller toes on both feet; floating osteotomies of the fifth metatarsal of both feet, and removal of bone fragments that had avulsed from the left navicular. An osteotomy is the intentional surgical cutting of a bone. The fifth metatarsal is the bone in either foot that leads to the littlest toe. An osteotomy is floating, rather than fixed, when after the bone is cut it is left to "float" inside the soft tissue and reunite on its own. A fixed osteotomy fixes the cut bone in place to reunite. The fifth metatarsals were causing the appellee pain where they were situated, and it was the objective of the appellant by performing floating osteotomies to allow the bones the opportunity to seek their own less stressful position and heal there.

Appellee signed a consent form before the surgery whereby she consented to operations for a left navicular repair and bilateral (both feet) metatarsal osteotomies. The consent form did not include the operation which was performed for the hammertoes condition, and appellee testified that she never heard a word about hammertoes until after the operations. Appellant says that the hospital inadvertently failed to include the hammertoes operation on the consent form but that he and the appellee discussed all of the operations and she signed a diagram of a foot that indicated the places where he would operate.

Immediately after the surgeries, appellee experienced pain in both feet which persisted. She went to her family physician, Dr. Ernst Musgrave, who advised her to consult an orthopedist in Lexington, Kentucky. She went to see Drs. William Wheeler and David Stevens, both orthopedists.

Dr. Stevens operated on appellee's feet. He repaired the non-union of the fifth metatarsals. That is to say he surgically put the bones into contact with each other, and secured or fixed that contact with a small bone plate in order to promote their reunion as they were still "floating." The left fifth metatarsal healed, but the right fifth metatarsal did not.

---

1. Highlands Regional Medical Center was also named as a defendant. The jury found no liability on its part, and it is not a party to the appeal.

Appellee alleged and proved to the satisfaction of the jury that appellant's actions were unnecessary, unwarranted, improper, unprivileged and nonconsensual, all in violation of accepted medical and podiatric standards of care.

The only issue on appeal is whether there was evidence sufficient to overcome appellant's motion for directed verdict.[2] We believe that there was ample evidence on behalf of appellee to withstand the motion.

There was evidence that appellee did not have the condition known as hammertoes, and that the surgery for that was unnecessary and improper. Dr. Stevens reviewed appellant's pre- and post-operative x-rays taken of appellee's feet and testified that he could see no indication of hammertoes. Dr. Stevens further testified that he knew of no reason why appellant had operated for hammertoes.

Dr. E. Dalton McGlamry, a podiatrist and appellant's expert witness, on cross-examination testified that operating to correct a nonexistent condition would be improper. Appellant himself admitted that unnecessary operations are considered improper within the podiatric profession.

We reiterate here that the appellee never signed a consent to an operation for hammertoes.

Dr. Stevens was asked to view the appellant's pre-operative x-rays of appellee's left foot and to say if he saw any navicular bone fragments which the appellant had claimed were present. He did, and answered that he saw none.

There was considerable evidence which tended to show that the floating osteotomies performed by the appellant were medically inappropriate. Dr. Stevens testified after reviewing the pre-operative x-rays that there was no reason for that surgery to be done, and that it was "inappropriate for her difficulties." Dr. Wheeler testified that the accepted medical practice is to fix the bone in place to help assure proper reunion. Dr. McGlamry testified he had come to disapprove of the floating osteotomy, and that it "leaves a lot to chance."

Dr. McGlamry testified that performance of unnecessary surgery is improper. Dr. Stevens testified that the appellee's current condition is causally related to appellant's surgery on the appellee.

Appellant contends that it is improper to consider the expert opinion of an orthopedist in relation to the practice of a podiatrist, citing *Blair v. Eblen*, Ky., 461 S.W.2d 370 (1970). That case held that the test is to consider whether the defendant acted with that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which the defendant belongs, acting in the same or similar circumstances. *Blair, supra,* at 373. Appellant says that orthopedics and podiatrics are separate and distinct. However, Dr. McGlamry, himself a podiatrist, testified that the surgery performed by the appellant upon the appellee was both podiatric and orthopedic, and we are convinced of that. Operations on the bones and joints of the human foot intersects the two specialties of podiatry and orthopedics for the purpose of qualified expert testimony.

There is evidence that appellant's operations on the appellee exceeded the scope of his privileges at the Highlands Regional Medical Center. Appellant admitted that once before the operations he had violated his privileges. Appellant's privilege was restricted to the area of the forefoot. Dr. William B. Cooke, a physician and Chief of Staff at the hospital, testified that the navicular is located at the hindfoot. Dr. S.G. Badrudduja, a surgeon, testified rather equivocally at deposition and at trial that the navicular is at the border between the hindfoot and forefoot. He did say that it is probably more hindfoot than forefoot.

The consent form shows that the appellant was to perform "navicular repair." Appellant testified that he never touched the navicular, but only removed fragments that had avulsed from it and situated in the soft tissue. He did have soft tissue privileges. Wherever the navicular is considered to be situated, there was evidence

**2.** Considerations for a proper determination of a motion for directed verdict and a motion for judgment *non obstante veredicto* are the same. *Cassinelli v. Begley,* Ky., 433 S.W.2d 651 (1968).

tending to prove that appellant violated his privileges at the hospital, as well as evidence that he did not, when he operated on the appellee.

There is evidence that the appellant violated hospital standards and rules. Mr. Lewis Ransdell, administrator of a large podiatry hospital, testified that a podiatrist is supposed to have an M.D. or a D.O. perform a history and physical of the patient, and look at lab tests before the podiatrist operates. Appellant never did this.

Appellant admitted in his answer to the complaint that he was not a member of the staff of the Highland Regional Medical Center. That institution's administrator testified that the appellant was not supposed to have operated on the appellee without having been on the staff.

The standard for decisions on motions for directed verdicts appears in *Taylor v. Kennedy*, Ky., 700 S.W.2d 415 (1985) as follows:

> [A] trial court is under a duty to consider the evidence in the strongest possible light in favor of the party opposing the motion. Furthermore, it is required to give the opposing party the advantage of every fair and reasonable inference which can be drawn from the evidence. And, it is precluded from entering either a directed verdict or judgment n.o.v. unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ. [Citation omitted.]

*Taylor, Id.* at 416.

■ Viewing the lengthy evidence thusly, and in conjunction with *Blair, supra,* we believe the trial court correctly overruled appellant's motion for a directed verdict. A directed verdict is improper where there is evidence to support both positions.

The judgment of the Floyd Circuit Court is affirmed.

All concur.